UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

A.D., an individual,

      Plaintiff,

v.                     Case No:  2:22-cv-651-JES-NPM

BEST WESTERN INTERNATIONAL,
INC. and APEX HOSPITALITY,
LLLP,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant Best Western International, Inc.'s Motion to Dismiss (Doc. #18) filed on November 21, 2022.  Plaintiff filed a Response in Opposition to Defendant Best Western International Inc.' Motion to Dismiss (Doc. #22)[1] on December 22, 2022.  A Reply (Doc. #28) was authorized and filed.  Also before the Court is defendant Apex Hospitality, LLLP's Motion to Dismiss Plaintiff's Complaint, Motion for More Definite Statement and Motion to Strike (Doc. #15) filed on November 14, 2022.  Plaintiff filed a Response in Opposition to Motion (Doc.

---

    [1] As noted in the Reply (Doc. #28, n.1), the Response filed in this case is identical to the one filed by Plaintiff in a companion case, including an incorrect case number and the misidentification of defendants.

#21) on December 21, 2022, and defendant filed a Reply (Doc. #26) on January 10, 2023.

## I.

The one-count Complaint (Doc. #1) in this case is brought pursuant to the Trafficking Victims Protection Reauthorization Act (TVPRA).  The Complaint alleges that plaintiff A.D. (Plaintiff or A.D.) is a survivor of sex trafficking perpetrated by non-parties. A.D. asserts that she was "repeatedly" (Id. at ¶ 7) "trafficked for commercial sex throughout Lee, Hillsborough, and Collier Counties in Florida," including "at the Defendants' hotel property" (Id. at ¶ 4) in Fort Myers, Florida (Id. at ¶ 11b). Plaintiff's cause of action is not against her traffickers, but against a franchisor and an owner of one of the many hotels from which she was trafficked.

Plaintiff sues defendants Best Western International, Inc. (BWI) and Apex Hospitality, LLP (Apex).  BWI, an Arizona corporation headquartered in Arizona, owns the Best Western Hotels & Resorts brand, one of the largest hotel brands in the world. (Id. at ¶ 11.)  BWI licenses the brand to over 4,700 hotels worldwide, with over 2,000 such hotels in North America.  (Id. at ¶ 11a.)  One of the branded hotels is the Best Western Fort Myers Inn & Suites (the BW Fort Myers hotel) located in Fort Myers, Florida.  (Id. at ¶ 11b.)  Plaintiff asserts that BWI "owns, supervises, and/or operates" this hotel.  (Id. at ¶¶ 11b, 31a.)

2

Apex is a separate limited liability limited partnership (LLLP) doing business as the BW Fort Myers hotel. (Id. at ¶ 12.)  Apex was involved in the staffing and operation of the BW Fort Myers hotel where Plaintiff was trafficked.  (Id.)

The TVPRA is a criminal statute that also provides a civil remedy to victims of sex trafficking.  Section 1591(a) of the Act imposes criminal liability for certain sex trafficking:

> (a) Whoever knowingly--
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C.A. § 1591(a).  In addition to a criminal punishment, the TVPRA provides the following civil remedy:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by

> receiving anything of value from participation in a
> venture which that person knew or should have known has
> engaged in an act in violation of this chapter) in an
> appropriate district court of the United States and may
> recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Thus, the TVRPA authorizes a victim of sex trafficking to bring a direct civil claim against the perpetrator of the trafficking and a "beneficiary" civil claim against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a). To state a claim for beneficiary liability under the TVPRA, Plaintiff must plausibly allege that the defendant "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to [A.D.]; and (4) [Defendants] knew or should have known that the venture violated the TVPRA as to [A.D.]." Doe v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021).

**II.**

BWI asserts that the district court lacks personal jurisdiction over it because plaintiff has failed to establish either general or specific jurisdiction, as required by due process. (Doc. #18, pp. 7-9.) Plaintiff responds that the court has specific jurisdiction over BWI because she has sufficiently

alleged BWI committed a tortious act within the State of Florida. (Doc. #22, p. 20.)   The Court agrees with plaintiff.

"A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82, 95 (2017) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583–585 (1999)).   The Supreme Court has recognized two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1024 (2021) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).   The Court summarized the differences:

> A state court may exercise general jurisdiction only when a defendant is essentially at home in the State. Ibid. General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant. Ibid. Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction. [] In what we have called the "paradigm" case, an individual is subject to general jurisdiction in her place of domicile.
>
> . . . .
>
> Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of

claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." [] The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. [] Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. [] Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

Ford Motor Co., 141 S. Ct. at 1024–25 (internal citations omitted).

In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' [] When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty., 582 U.S. 255, 264 (2017) (internal citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v.

6

Bauman, 571 U.S. 117, 125 (2014). Florida's long-arm statute provides for both specific and general personal jurisdiction. Fla. Stat. §§ 48.193(1)-(2); Madara v. Hall, 916 F.2d 1510, 1516 n.7 (11th Cir. 1996). Here, plaintiff only asserts the existence of specific personal jurisdiction (Doc. #22, p. 20), so the Court need not address BWI's assertion that there is no general jurisdiction.

Procedurally, a motion to dismiss for lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2). To withstand such a motion to dismiss, plaintiff must plead sufficient facts in the complaint to establish a prima facie case of jurisdiction over the non-resident defendant. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013). The court accepts the facts alleged in the complaint as true to the extent they are uncontroverted by defendant's affidavits. Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). If defendant challenges plaintiff's allegations through non-conclusory affidavits or other competent evidence, plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of her own. Louis Vuitton Malletier, 736 F.3d at 1350; Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). Where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. PVC Windoors,

Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 810 (11th Cir. 2010).

The Complaint alleges that Plaintiff was trafficked for commercial sex throughout a three-county area in Florida, including being sold via commercial sex transactions at BWI's and Apex's hotel property.  (Doc. #1, ¶ 4.)  The Complaint asserts plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at BWI's and Apex's hotel in Fort Myers, Florida.  (Id. at ¶ 7.)  BWI "owns, supervises, and/or operates" the BW Fort Myers hotel, and profited from illegal sex trafficking involving A.D. at its hotels in Florida, including the BW Fort Myers hotel. (Id. at ¶¶ 11b, 11d.)  The Complaint further asserts that BWI exercised day-to-day control over the Best Western hotels, including the one in Fort Myers, through brand standards and the terms of its franchise agreement (Id. at ¶ 11h), and that BWI caused injuries to A.D. in Florida by benefiting from the sex trafficking in Florida.  (Id. at ¶¶ 11, 12.)

BWI makes a single-sentence factual argument regarding the alleged lack of personal jurisdiction:

> BWI, a cooperative association without offices or corporate presence in Florida and not being the owner or operator or employer for any staff at the hotel at issue in this case, does not have sufficient forum-related activities relating to the claim asserted and so the Court has no specific jurisdiction over BWI.

(Doc. #18, p. 9.)   The Affidavit of Brendan Genther (Doc. #18-4, Exh. D) contests facts related to general jurisdiction and BWI's liability as an owner, supervisor, or operator, but does not contain a factual contradiction of the sex trafficking of A.D. in the BW Fort Myers hotel.   Due process is not offended by the exercise of specific jurisdiction by a Florida court over Plaintiff's claim in this case.   This portion of the motion to dismiss is denied.

### III.

BWI argues that dismissal is required because the Complaint fails to sufficiently allege the dates on which the trafficking acts took place, which improperly precludes the ability to seek dismissal based on the statute of limitations. (Doc. #18, p. 25.) BWI correctly asserts that the statute of limitations for a TVPRA violation is ten years; that plaintiff alleges she was trafficked at the Fort Myers hotel in approximately February 2012; and that the original Complaint was filed on February 11, 2022. (Id.)  BWI argues that the failure to plead the dates of the trafficking incidents with sufficient specificity to show the claim was not barred by the statute of limitations requires that the claim be dismissed. (Id.)  Apex also advances the argument that specific dates are required. (Doc. #15, pp. 16-17.)

There is no legal support for the notion that a complaint must be dismissed if it fails to negate a potential statute of

limitations affirmative defense on its face. "A statute of limitations bar is an affirmative defense," and a plaintiff is "not required to negate an affirmative defense in [its] complaint." La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (internal quotation marks omitted), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). "[D]ismissal for failure to state a claim on statute of limitations grounds is appropriate 'only if it is apparent from the face of the complaint that the claim is time-barred.'" United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (citation omitted). Other than perhaps the conclusory statement "Plaintiff's claims are time-barred" (Doc. #18, p. 3), BWI does not argue that a time-bar is apparent on the face of the Complaint. (Id. at 25.) Apex also argues that specific dates are required. (Doc. #15, pp. 16-17.) In any event, the Court finds that a time-bar is not apparent on the face of the Complaint. This portion of the motion to dismiss is denied.

**IV.**

Defendants also seeks dismissal because, for various reasons, the Complaint fails to sufficiently plead the cause of action. Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007). However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A.   **Factual Disputes with Allegations In Complaint**

The Complaint alleges that BWI "owns, supervises, and/or operates" the BW Fort Myers hotel. (Doc. #1, ¶¶ 11, 11b, 31a.) BWI argues that it does not own the subject hotel, and that two public records from the Property Appraiser's Office and a "membership agreement" with Apex establish ownership by Apex. (Doc. #18, pp. 4-7.) BWI also disputes the factual claims that it is in an agency relationship with Apex, that BWI has the means to control its branded hotels, and that BWI has day-to-day control over the subject hotel. (Id.) The only specific reference to Apex Hospitality, LLLP (Apex) is in paragraph 12 of the Complaint. All other references in the Factual Allegations are about 'defendants' collectively, BWI or "Brand Hotel Defendants", and the BW Ft. Myers hotel.

None of the three documents cited by BWI are referred to, incorporated into, or essential to the claim in the Complaint. The documents, either individually or cumulatively, are not dispositive of the factual disputes. It is not the function of a motion to dismiss a complaint to resolve factual disputes, and the Court declines to do so here. If the allegations are material and intentionally false, as BWI seems to suggest, BWI may have an avenue for sanctions against both plaintiff and her counsel pursuant to Fed. R. Civ. P. 11(c). But factual disputes such as

these will not be resolved on a motion to dismiss.  This portion of the motion to dismiss is denied as to BWI.

As to Apex, there is no factual basis directed specifically at Apex and separately from BWI.  The Court finds no plausible statement of a claim against Apex.  The motion to dismiss will be granted as to Apex without further discussion of the specific elements of a TVPRA claim.

**B.  Sufficiency of TVPRA Claim Allegations**

BWI asserts that the Complaint fails to plead sufficient facts to plausibly allege <u>any</u> element of the TVPRA claim.  (Doc. #18, pp. 9-25.)  The Court addresses each element in turn.

**(1)  "Knowingly Benefitted"**

To satisfy the first element of a TVPRA beneficiary claim, plaintiff must allege that defendant "knew it was receiving some value from participating in the alleged venture."  <u>Red Roof Inns</u>, 21 F.4th at 724.  As the Eleventh Circuit stated,

> "Knowingly benefits" means "an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Knowledge*, Black's Law Dictionary (11th ed. 2019). And Section 1595(a) explains that a defendant may benefit "financially or by receiving anything of value." Accordingly, a plaintiff like the Does must allege that the defendant knew it was receiving some value from participating in the alleged venture.

Id. at 723-24.   In the absence of a more stringent statutory pleading requirement, knowledge "may be alleged generally."  Fed. R. Civ. P. 9(b).

The Complaint alleges that "BWI knowingly benefited, or received something of value, from its participation in a venture which it knew or should have known violated the TVPRA through, *inter alia*, royalty payments, licensing fees, and percentages of the gross room revenue which BWI is entitled to under the franchise agreements."  (Doc. #1, ¶ 11r.)   The Complaint further alleges that "BWI benefits financially from room rentals and other incidentals recognized by renting rooms in which the Plaintiff was sex trafficked."  (Doc. #1, ¶ 11s.)   The Court has found that similar allegations are sufficient to satisfy the first element, see S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020), and that less robust allegations are insufficient, A.D. v. Holistic Health Healing, Inc., 2:22-cv-641-JES-NPM, 2023 WL 2242507, *2-3 (M.D. Fla. Feb. 27, 2023).   While BWI raises factual disputes, resolution of those disputes is beyond the proper scope of a motion to dismiss.  The Court finds that this element has been sufficiently pled.

**(2) Participation in a Venture**

Plaintiff must allege that the benefit(s) received by BWI was from "participation in a venture" which BWI knew or should have known has engaged in an act in violation of the TVPRA. 18 U.S.C.

§ 1595(a).  The Eleventh Circuit rejected the statutory definition of "participation in a venture" found in the criminal provision, § 1591(e)(4), which defined "participation in a venture" as "knowingly assisting, supporting or facilitating a violation of subsection (a)(1)."  Instead, the Eleventh Circuit held that "participation in a venture" in the civil context requires that plaintiff allege that the franchisor "took part in a common undertaking or enterprise involving risk and potential profit." Red Roof Inns, 21 F.4th at 725.

BWI argues that "participation" requires plaintiff to plead that an "overt act" was committed to further the alleged sex trafficking.  (Doc. #18, p. 13.)  The undersigned has previously found that it was not necessary to plead an overt act.  S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020). The more recent Red Roof Inns discussion of this element does not refer to an overt act pleading requirement. 21 F.4th at 725-27. When Congress desires an overt act as an element, it knows how to say so.  E.g., 18 U.S.C. § 1531(b)(1)(B).  The Court concludes that the Complaint need not explicitly plead an overt act to be sufficient.

A complaint must, however, plausibly plead both "participation" and a "venture."  BWI argues that Complaint does not sufficiently describe the "venture" and fails to connect any alleged benefit received to BWI's alleged participation in the

venture.  The Court concludes that A.D. has not plausibly alleged that BWI participated in a venture that violated the TVPRA.

As in Red Roof Inns, the Court begins with the description of the venture A.D. alleges.  Red Roof Inns, 21 F.4th at 726.  The sex trafficking violation of the TVPRA with respect to A.D. began in November 2011 when a man not identified in the Complaint "took advantage of her innocence and forced her into a sexual encounter" under the guise of a loving relationship and "would soon traffick[sic] her in hotels throughout Central Florida."  (Doc. #1, ¶ 33.)  A second trafficker soon became involved, and A.D. became the victim of sex trafficking at the BW Fort Myers hotel beginning approximately February 2012.  (Id. at ¶¶ 34-38.)  A.D would come to that hotel for two or three days and perform commercial sex acts with 10 to 15 buyers a day.  (Id. at ¶ 40.) The Complaint specifically alleges that A.D. was trafficked in violation of the TVPRA, which makes it a crime to "cause" a person under 18 years old to "engage in a commercial sex act." 18 U.S.C. § 1591(a).  (Id. at ¶¶ 3-4) The Complaint further alleges that BWI and Apex "continued to operate a venture which enabled, harbored, held, facilitated, . . . the repeated and continuous trafficking, exploitation, and victimization of A.D. for their own benefit." (Id. at ¶ 8.)  The venture was "engaging in violations of the TVPRA." (Id. at ¶ 9.)

The Complaint alleges that defendants "actively participated in this illegal endeavor by knowingly or negligently providing lodging in which to harbor A.D. while he was trafficking her." (<u>Id.</u> at ¶ 49.)  The "participation" with A.D.'s traffickers in the criminal activity was identified as taking no action while A.D. was being trafficked at the BW Fort Myers hotel (<u>Id.</u> at ¶ 50) and failing to take reasonable measures to stop sex trafficking in the hotel (<u>Id.</u> at ¶ 51).

As in <u>Red Roof Inns</u>[2], the Court finds insufficient factual allegations to plausibly establish that BWI participated in a common undertaking of a sex trafficking venture involving risk or profit.  <u>Red Roof Inns</u>, 21 F.4th at 727.  The Complaint asserts that A.D. was present at the BW Fort Myers hotel for only a few days in February 2012.  The "participation" in the sex trafficking venture is essentially that the franchisor and the hotel operator did not fight hard enough to keep these traffickers from using their hotel.  The Complaint acknowledges that Defendants opposed sex traffickers, but fault defendants for taking ineffective steps to curtail the traffickers.  This hardly sounds like participating in a venture.  This is particularly true of a franchisor, which has no direct contact with its alleged venture partners.  <u>See Red</u>

---

[2] <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714 (11th Cir. 2021).

Roof Inns, Inc., 21 F.4th at 726-27 (allegations that the franchisors received royalty fees based on gross room revenue, and supervised, oversaw, or controlled the operation of the renting of rooms at the hotels, showed a financial benefit but not participation in a common undertaking involving risk or profit); C.C. v. H.K. Grp. of Co., Inc., No. 1:21-cv-1345-TCB, 2022 WL 467813, at *5, 2022 U.S. Dist. LEXIS 29213, at *11 (N.D. Ga. Feb. 9, 2022)(same); G.G. v. Salesforce.com, Inc., 603 F. Supp. 3d 626, 645 (N.D. Ill. 2022) ("In cases involving hotel franchisors, . . . claims that branded hotels rented rooms to people they knew or should have known were engaged in sex trafficking may be 'sufficient to state a plausible claim against the specific hotels where the plaintiff was trafficked, but they do not make a plausible claim that the franchisors directly participated in a venture that *trafficked the plaintiff*.'" (citation omitted) (emphasis in original); J.M. v. Choice Hotels Int'l, Inc., No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *4, 2022 U.S. Dist. LEXIS 190054, at *11 (E.D. Cal. Oct. 18, 2022) (finding no participation in a venture where the franchisor did not directly rent rooms to the sex trafficker, rather franchisee hotels did). "[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking." A.B. v. Wyndham Hotels & Resorts, Inc., 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) (citation omitted). See also Red Roof Inns, Inc., 21 F.4th at 727 ("[O]bserving something

is not the same as participating in it."); <u>L.H. v. Marriott Int'l, Inc.</u>, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (finding that "any local business venture that simply *allowed* the trafficking by 'failing to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing their profit'" was "not enough to trigger TVPRA liability." (emphasis in original)); <u>A.D. v. Wyndham Hotels & Resorts, Inc.</u>, 4:19CV120, 2020 U.S. Dist. LEXIS 250759, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("[A] failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.").

The Court finds that this element has not been plausibly pled in the Complaint, which will be dismissed without prejudice.

**(3) Objective of the Venture**

To satisfy the third element, plaintiff must allege that "the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff." <u>Red Roof Inns</u>, 21 F.4th at 725. Here, the Complaint alleges that A.D. was sex trafficked in violation of § 1591(a). (Doc. #1, ¶¶ 6, 8, 31.) These allegations are sufficiently pled.

**(4) Actual or Constructive Knowledge**

The final element of a TVPRA beneficiary claim comes from the statutory requirement that the defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). This requires the plaintiff to

allege that the defendant had either actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff. Red Roof Inns, 21 F.4th at 725. Thus, Plaintiff must plausibly allege that BWI at least constructively knew "that the venture in which they participated and from which they benefited violated the TVPRA as to" A.D.   Red Roof Inns, 21 F.4th at 725.   Since the "participation" and "venture" components are not sufficiently plead, the actual or constructive knowledge of participation in such a venture cannot be plausible pled either.

**V.**

BWI also challenges the alleged vicarious liability and the availability of punitive damages.  (Doc. #18, pp. 22-25, 25-26.) Apex seeks to strike certain paragraphs and for a more definite statement on dates.  (Doc. #15, pp. 15-17.)  Since the complaint must be amended, the Court finds it unnecessary to address these issues at this time.

Accordingly, it is now

**ORDERED**:

1. Defendant Apex's Motion to Dismiss, Motion for More Definite Statement and Motion to Strike (Doc. #15) is **GRANTED** as to the Motion to Dismiss and **DENIED** as moot as to the more definite statement and motion to strike.

2. Defendant BWI's Motion to Dismiss (Doc. #18) is **GRANTED IN PART AND DENIED IN PART** as set forth above.

3. The Complaint is **dismissed without prejudice** to filing an Amended Complaint within **TWENTY-ONE (21) DAYS** of this Opinion and Order.

   **DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of April 2023.

   _____
   JOHN E. STEELE
   SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record